UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

RAMON RIVERA,

               Plaintiff,                **MEMORANDUM AND ORDER**
                                                            **09 CV 2450 (LB)**

              - against -

BANK OF AMERICA HOME LOANS,

               Defendant.

---------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiff Ramon Rivera brings this action against defendant BAC Home Loans Servicing, LP[1] ("BAC Servicing") claiming that defendant breached the Servicer Participation Agreement with Fannie Mae when it failed to properly evaluate plaintiff for a home loan modification under the Home Affordable Modification Program ("HAMP"), Sections 101 and 109 of the Emergency Economic Stabilization Act of 2008, as amended by Section 7002 of the American Recovery and Reinvestment Act of 2009. Defendant moves to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion to dismiss is granted.[2]

## BACKGROUND

      This case presents an unfortunate, but all too common set of circumstances in the world today. Plaintiff is a homeowner in financial distress who seeks a loan modification from an unresponsive bank relying on an ineffectual federal program. This action arises out of the thirty-year mortgage on plaintiff's home in Floral Park, New York. Plaintiff borrowed $402,500 from

---

[1] BAC Home Loans Servicing, LP was sued herein as Bank of America Home Loans.
[2] This action is before me for all purposes on the consent of the parties pursuant to 28 U.S.C. § 636(c). (Docket entries 4, 6.)

Concord Mortgage Corporation on March 23, 2007. (Docket entry 19, Am. Compl., ¶4.) Defendant is the servicer of plaintiff's mortgage. (Id. at Ex. A.) After plaintiff's hours were reduced as a checkpoint supervisor for the Transportation Security Administration in early 2009, plaintiff became unable to afford his monthly mortgage payments. (Id. at ¶5.) Plaintiff requested a loan modification from defendant, but defendant denied the request on May 6, 2009. (Id. at ¶¶6, 9; Ex. A.) The following day, defendant notified plaintiff that his loan was in default and warned plaintiff that if he failed to pay $8,553.58 by June 11, 2009, the mortgage payments would be accelerated and foreclosure proceedings would be initiated. (Id. at Ex. A.)

Before foreclosure proceedings were initiated, plaintiff commenced this action on June 15, 2009.[3] Shortly thereafter, defendant provided plaintiff an application for a home loan modification Trial Period Plan under the HAMP.[4] (Id. at ¶10; Ex. B.) The HAMP is a federal program that is part of the Making Home Affordable Program. (Id. at Ex. B.) The HAMP was "designed to help three to four million financially struggling homeowners by modifying loans to a level that is affordable for borrowers." (Id.) Defendant entered into a Securities Purchase Agreement with the United States Department of the Treasury on October 26, 2008 and a Servicer Participation Agreement (the "Agreement") with Fannie Mae, as financial agent for the United States, on April 17, 2009. (Id. at ¶¶19-20.) According to the uniform standards set forth in the Agreement as well as the HAMP directives and guidelines, defendant was required to review all mortgage loans in default that it serviced and determine whether the borrowers on

---

[3] Plaintiff commenced the action *pro se*, but retained counsel before the instant motion was filed. (Docket entry 48.)
[4] An application for a Trial Period Plan is the first step in obtaining a home loan modification under the HAMP. If the application reveals that a borrower is eligible under the HAMP, the mortgage servicer will offer the borrower a new affordable mortgage payment for a three month trial period. (Am. Compl, Ex. B.) After the borrower successfully completes the three month trial period, the servicer will send the borrower a new loan modification agreement. (Id.) A new home loan modification agreement under the HAMP may bring a qualified borrower's account current, reduce the interest rate on the borrower's loan, extend the term of the borrower's loan, or delay repayment of part of the mortgage principal. (Id.)

those loans were eligible for a loan modification. (Id. at ¶21.) In order to determine if plaintiff qualified for a loan modification under the HAMP, defendant instructed plaintiff to submit the required documentation and the new affordable mortgage payment by August 2, 2009. (Id. at Ex. B.) Defendant calculated plaintiff's new affordable mortgage payment as $1,844.50. (Id.) Plaintiff alleges that defendant calculated his new affordable mortgage payment in error by using his 2008 tax returns instead of the 2009 pay stubs which reflected his recent reduction of income. (Id. at ¶¶11-13.) Plaintiff claims that by improperly evaluating plaintiff for the HAMP loan modification, defendant breached its obligations under the Agreement with Fannie Mae.

## PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* against BAC Servicing and Washington Mutual Bank on June 5, 2009.[5] (Docket entry 1.) Throughout this litigation, plaintiff has always timely appeared and presented himself earnestly and respectfully before the Court. At a pre-motion conference held on November 9, 2009, the Court granted plaintiff leave to amend his complaint and stayed defendants' response to the complaint.[6] (Docket entry 18.) On December 31, 2009, plaintiff filed an amended complaint, naming only BAC Servicing as a defendant. (Docket entry 19.) The amended complaint incorporated by reference the Agreement between BAC Servicing and Fannie Mae.[7] (Am Compl., ¶20.)

---

[5] Plaintiff's original complaint asserted claims for fraud, wantonness, trespass, abuse of process, slander of title, wrongful foreclosure, unjust enrichment, and civil conspiracy. (Compl., pp. 4-11.) These claims were dropped when plaintiff amended his complaint.

[6] Plaintiff, who is a veteran, appeared at the initial conference on November 9, 2009 in full dress uniform.

[7] Neither party attaches a copy of the Agreement to the instant motion. Plaintiff cites to the Agreement in his amended complaint and provides the Internet address where the complete version of the Agreement is available to the public. (Am. Compl., ¶¶20-22.) However, the Agreement is no longer at the same Internet address that plaintiff listed in the amended complaint. The Amended and Restated Servicer Participation Agreement, which "amend[s] and restate[s] the Prior Agreement [between defendant and Fannie Mae] in its entirety" and was executed on January 26, 2010, is now found at: http://www.treasury.gov/initiatives/financial-stability/housing-

3

As the parties were engaged in settlement negotiations, the Court stayed defendant's response to the amended complaint from January 12, 2010 until November 29, 2010. During that time, the Court held seven conferences to discuss settlement. In January 2010 plaintiff provided defendant a new application for a home loan modification. After defendant failed to decide the new application for several months, the Court ordered defendant to show good cause why plaintiff's loan modification application had not been acted upon. (Docket entry 23.) On May 10, 2010, defendant informed the Court that plaintiff had been approved for a loan modification. (Docket entry 24.) However, plaintiff rejected defendant's loan modification offer, as it was not made pursuant to the HAMP. At a status conference on June 22, 2010, defendant's counsel informed the Court that defendant had recently changed its internal process for loan modification applications under the HAMP. (Docket entry 32.) Accordingly, plaintiff had to submit another application. At the status conference on August 17, 2010, defendant's counsel informed the Court that plaintiff was not currently eligible for a loan modification under the HAMP because his sole source of income was temporary workers' compensation benefits. Nonetheless, there were further efforts to resolve the case. (Docket entries 39 and 43.) Ultimately, no resolution was reached and the Court set the briefing schedule for defendant's instant motion to dismiss.[8] (Docket entry 46.) Counsel appeared on plaintiff's behalf. (Docket entry 48.) Defendant now moves to dismiss the amended complaint. (Docket entry 50.) Plaintiff opposes the motion and defendant has replied. (Docket entries 52 and 53.)

---

programs/mha/Documents_Contracts_Agreements/093010bankofamericahomeloansSPA%28incltransmittal%29-r.pdf. (Last visited April 12, 2011).

[8] As plaintiff stated on the record that he intended to move to amend his complaint, the Court set October 28, 2010 as the deadline for plaintiff to file a second amended complaint. (Docket entry 46.) Plaintiff never filed a second amended complaint.

# DISCUSSION

## I. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Iqbal, 129 S. Ct. at 1950. In deciding a motion to dismiss, the Court may consider, in addition to the complaint, documents that plaintiff attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken. Chambers, 282 F.3d at 152-153.

## II. Breach of Contract Claim

Plaintiff claims that defendant breached its contractual obligations under the Agreement when it failed to properly evaluate plaintiff for a home loan modification under the HAMP. Plaintiff acknowledges that he is not a party to the Agreement, which was executed between defendant and Fannie Mae. However, plaintiff argues that he is a third party beneficiary of the Agreement and therefore may enforce the contractual obligations against defendant.[9] Defendant argues that plaintiff is not a third party beneficiary to the Agreement and therefore lacks standing

---

[9] Plaintiff's counsel does not cite a *single* case in support of this argument.

to assert a breach of contract claim. (Docket entry 51, Mem. of Law in Support of BAC Home Loans Servicing, LP's Motion to Dismiss ("Def.'s Mem."), pp. 5-6.[10]) Defendant characterizes plaintiff's breach of contract claim as "merely an attempt to enforce a nonexistent private right of action under HAMP." (Id. at p. 6.) Although plaintiff does not claim that the HAMP directly provides him a right to sue for a home loan modification, the Court notes that other district courts that have considered the issue have not found a private right of action under the HAMP. See e.g., Phipps v. Wells Fargo Bank, N.A., No. CV F 10-2025, 2011 U.S. Dist. LEXIS 10550, at *24 (E.D. Cal. Jan. 27, 2011) ("Nowhere in the HAMP Guidelines, nor in the [Emergency Economic Stabilization Act of 2008], does it expressly provide for a private right of action."); Marks v. Bank of Am., N.A., No. 03:10-cv-08039, 2010 U.S. Dist. LEXIS 61489, at *13-20 (D. Ariz. June 22, 2010) (finding no express or implied private right of action under the HAMP).

The precise issue of whether a borrower is the third party beneficiary to a Servicer Participation Agreement between Fannie Mae and a mortgage servicer is a matter of first impression for courts within the Second Circuit. Federal law controls the interpretation of contracts where the United States is a party to the contract. See Maniolos v. United States, No. 10 Civ. 3383 (AJP), 10 Civ. 4467 (AJP), 2010 U.S. Dist. LEXIS 105522, at *28-29 (S.D.N.Y. Oct. 4, 2010) ("Because the OIC is a contract involving the United States, its interpretation and construction is governed by federal common law."); EEOC v. Fed. Express Corp., 268 F. Supp. 2d 192, 204 (E.D.N.Y. 2003) ("[C]ontracts with the federal government are governed by federal common law.") (citing Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 55 n.4 (2d Cir. 1985)); see also Speleos v. BAC Home Loans Servicing, L.P., No. 10-11503, 2010 U.S. Dist. LEXIS 132111, at *6 (D. Mass. Dec. 14, 2010) (applying federal common law to the

---

[10] All page numbers cited herein refer to the ECF page number.

interpretation of the Servicer Participation Agreement under HAMP). The Agreement was executed between defendant and Fannie Mae in its capacity as financial agent of the United States. (Am. Compl. ¶20; Amended and Restated Servicer Participation Agreement, p. 1.) The Agreement expressly provides that it "shall be governed by and construed under Federal law and not the law of any state or locality, without reference to or application of the conflicts of law principles." (Amended and Restated Servicer Participation Agreement, p. 12.) Whether plaintiff is a third party beneficiary to the Agreement is thus a question of federal law.

"According to federal common law, a third party must be an intended, rather than incidental, beneficiary in order to enforce a contract." Kinek v. Gulf & W., 720 F. Supp. 275, 280 (S.D.N.Y. 1989). "Federal common law, in deciding whether a third-party beneficiary may sue, looks to the same considerations as does the Restatement of Contracts." Davis v. United Air Lines, Inc., 575 F. Supp. 677, 680 (E.D.N.Y. 1983). Section 302 of the Restatement (Second) of Contracts provides:

> [u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302(1) (1981).

In the context of a government contract, the Restatement notes that "[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Restatement (Second) of Contracts § 313 cmt. a. Particularly, Section 313 of the Restatement (Second) of Contracts provides:

> a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a

7

> member of the public for consequential damages resulting from performance or failure to perform unless (a) the terms of the promise provide for such liability; or (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Restatement (Second) of Contracts § 313(2) (1981); see also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary.") (citing Restatement (Second) of Contracts § 313(2)). Thus, under the Restatement of Contracts, a plaintiff claiming to be the intended third party beneficiary of a government contract must show that he was "intended to benefit from the contract and that third-party beneficiary claims are consistent with the terms of the contract and the policy underlying it." Speleos, 2010 U.S. Dist. LEXIS 132111, at *9.

### A. Intent to Benefit

The terms of the Agreement as well as the policy underlying the HAMP reflect that the sole intended benefit of the Agreement was the provision of home loan modifications to qualified borrowers like plaintiff. The Department of the Treasury established the HAMP pursuant to Sections 101 and 109 of the Emergency Economic Stabilization Act of 2008, as amended by Section 7002 of the American Recovery and Reinvestment Act of 2009. (Amended and Restated Servicer Participation Agreement, p. 1.) According to the terms of the Agreement, "the primary purpose of [the HAMP] was the modification of first lien mortgage loan obligations and the provision of loan modification and foreclosure prevention services relating thereto." (Id.) In connection with the implementation of the HAMP, Fannie Mae, as financial agent of the United States, and defendant executed the Agreement which expressly provides that defendant "shall

perform the Services for all mortgage loans it services." (Id. at p. 3.) Following a thorough analysis of the Servicer Participation Agreement and the HAMP, the District Court for the Southern District of California concluded that "[u]pon a fair reading of the Agreement in its entirety and in the context of its enabling legislation, it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers." Marques v. Wells Fargo Home Mortgage, Inc., No. 09-cv-1985, 2010 U.S. Dist. LEXIS 81879, at *15 (S.D. Cal. Aug. 12, 2010). This Court agrees that the Agreement "expresses a clear intent to directly benefit the eligible borrowers." Id. at *16.

In finding that the Agreement intends to directly benefit eligible borrowers, the Court also relies upon cases from within this Circuit where public housing tenants have been permitted to assert third party beneficiary claims under federal housing program contracts. In Concerned Tenants Association v. Pierce, 685 F. Supp. 316, 322 (D. Conn. 1988), the Court addressed the issue of whether public housing tenants were the intended third party beneficiaries of a contract between the United States Department of Housing and Urban Development ("HUD") and the local housing authority, "pursuant to which HUD disperses federal funds to the public housing authority on the condition that the public housing authority complies with the requirements of the Housing Act and HUD's regulations." The Court found that the "tenants have enforceable rights as intended beneficiaries to obtain compliance with the obligations under the [contract] to provide decent and safe housing." Id. at 324. The Court reasoned that "[t]he provisions of the [contract] make clear that it was executed primarily for the purpose of benefiting the tenants" and "the language of the Housing Act and its legislative history demonstrate the Congress intended that the regulatory contracts entered into pursuant to the Act were designed to benefit the tenants as a mechanism for ensuring they receive decent and safe housing." Id. at 323.

9

Similarly, at least two district courts have found that low-income tenants were the intended third party beneficiaries of a contract between HUD, the local housing authority, and landlords, pursuant to which landlords were required to comply with housing quality standards. Green v. Konover Residential Corp., No. 3:95CV1984, 1997 U.S. Dist. LEXIS 18893, at *32-33 (D. Conn. Nov. 24, 1997) ("We can perceive of no one more intended as a beneficiary than the low-income tenants for whose benefit these apartments were being constructed."); McNeill v. N.Y. City Hous. Auth., 719 F. Supp. 233, 249 (S.D.N.Y. 1989) ("The mutual promises contained in the HAP contracts were intended to benefit plaintiffs.").

### B. Consistency with the Terms of the Contract

Although the Agreement at issue herein was intended to directly benefit qualified borrowers like plaintiff, plaintiff's breach of contract claim cannot survive the instant motion to dismiss because the terms of the Agreement preclude plaintiff from enforcing its provisions. Plaintiff does not identify any language in the Agreement that evidences an intent to permit him to enforce the Agreement against defendant. In fact, the terms of the Agreement make plain that the parties to the Agreement did *not* intend for borrowers to enforce the contract. The relevant portion provides: "[t]he Agreement shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." (Amended and Restated Servicer Participation Agreement, p. 13.) Moreover, the Agreement details the actions which constitute a default by defendant and the remedies specifically available to Fannie Mae in the event of defendant's default. (Id. at pp. 5-6.)

With very few exceptions, almost all federal courts to have addressed this precise issue have rejected borrowers' claims to enforce the Servicer Participation Agreements as third party

10

beneficiaries. See e.g., Phipps, 2011 U.S. Dist. LEXIS 10550, at *22; Grill v. BAC Home Loans Servicing LP, No. 10-CV-03057, 2011 U.S. Dist. LEXIS 3771, at *18 (E.D. Cal. Jan. 13, 2011); Orcilla v. Bank of Am., N.A., No. C10-03931, 2010 U.S. Dist. LEXIS 133353, at *10 (N.D. Cal. Dec. 16, 2010); Speleos, 2010 U.S. Dist. LEXIS 132111, at *15; Gallardo v. Wells Fargo Bank, N.A., No. CV 10-01441, 2010 U.S. Dist. LEXIS 119066, at *9 (C.D. Cal. Oct. 26, 2010); Martinez v. Bank of Am. Nat'l Ass'n, No. 3:10-cv-00287, 2010 U.S. Dist. LEXIS 113378, at *28 (D. Nev. Oct. 20, 2010); Zoher v. Chase Home Fin., No. 10-14135-CIV, 2010 U.S. Dist. LEXIS 109936, at *13 (S.D. Fla. Oct. 14, 2010); Phu Van Nguyen v. BAC Home Loan Servs., LP, No. C-10-01712, 2010 U.S. Dist. LEXIS 105704, at *14 (N.D. Cal. Oct. 1, 2010); McKensi v. Bank of Am., N.A., No. 09-11940, 2010 U.S. Dist. LEXIS 99540, at *16 (D. Mass. Sept. 22, 2010); Wright v. Bank of Am., N.A., No. CV 10-01723, 2010 U.S. Dist. LEXIS 73807, at *14-15 (N.D. Cal. July 22, 2010); Simmons v. Countrywide Home Loans, Inc., No. 09cv1245, 2010 U.S. Dist. LEXIS 65031, at *15 (S.D. Cal. June 28, 2010); Marks, 2010 U.S. Dist. LEXIS 61489, at *13; Villa v. Wells Fargo Bank, N.A., No. 10CV81, 2010 U.S. Dist. LEXIS 23741, at *7 (S.D. Cal. Mar. 15, 2010); but see Sampson v. Wells Fargo Home Mortgage, Inc., No. CV 10-08836, 2010 U.S. Dist. LEXIS 137635, at *6 (C.D. Cal. Nov. 19, 2010) (finding on motion for temporary restraining order that plaintiff "made a substantial showing that she is an intended beneficiary of the HAMP"); Marques, 2010 U.S. Dist. LEXIS 81879, at *19 (finding that "Plaintiff may be able to state a claim against Defendant as an intended beneficiary of the Agreement"); Reyes v. Saxon Mortgage Servs., No. 09cv1366, 2009 U.S. Dist. LEXIS 125235, at *5 (S.D. Cal. Nov. 5, 2009) (finding that plaintiff "has alleged sufficient facts to support his third party beneficiary theory"). Defendant urges the Court to follow those district courts that have dismissed third party beneficiary claims identical to plaintiff's claim herein. Although

those decisions are not binding, the Court finds them to be persuasive insofar as the courts have found that the terms of the Servicer Participation Agreement do not demonstrate that the parties intended to grant qualified borrowers the right to enforce the Agreement.

The Court is also guided by a similar case recently decided in the Southern District of New York. In <u>Fellows v. CitiMortgage, Inc.</u>, 710 F. Supp. 2d 385, 406 (S.D.N.Y. 2010), Judge Cote decided that a borrower was not the intended third party beneficiary under New York law of a servicing guide between the mortgage servicer and Fannie Mae. Although <u>Fellows</u> did not involve a Servicer Participation Agreement under the HAMP, the servicing guide at issue "unambiguously state[d] that a borrower, like [plaintiff], is not 'intended to be a legal beneficiary of the [Servicing Contract].'" <u>Id.</u> Likewise, the Agreement at issue herein contains unambiguous language limiting the right to enforce the obligations under the Agreement to the parties to the contract.

In sum, although the primary purpose of the Agreement was to confer a direct benefit on qualified borrowers who could no longer afford their mortgage payments, the express terms of the Agreement foreclose the ability of borrowers to enforce any right to a loan modification under the Agreement. The Court concludes that plaintiff is not the intended third party beneficiary of the Agreement and lacks standing to assert a breach of contract claim against defendant. This defect cannot be cured by amendment. Accordingly, defendant's motion to dismiss is granted. Although plaintiff does not have an enforceable right to a loan modification under the Agreement or the HAMP and therefore cannot maintain this action, the Court nonetheless urges defendant to work with plaintiff to consider his loan for a modification.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is granted. The Clerk of Court is directed to enter judgment for defendant and close this case. Each party shall bear their own costs.

　　　　　　　　　　　　　　　　　　　_____/S/_____
　　　　　　　　　　　　　　　　　　　LOIS BLOOM
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: April 21, 2011
　　　　Brooklyn, New York